UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

```
_____
                           :
JUAN C. SALAS,             :
                           :
           Petitioner,     :    Civ. No. 11-5154 (NLH)
                           :
      v.                   :    OPINION
                           :
CHARLES WARREN, et al.,    :
                           :
           Respondents.    :
_____  :
```

APPEARANCES:
Juan C. Salas, No. 704311-C/524176
New Jersey State Prison
P.O. Box 861
Trenton, NJ 08625
      Petitioner pro se

Linda A. Shashoua
Robin Ann Hamett
Maura Murphy Sullivan
Camden County Prosecutor's Office
25 North Fifth Street
Camden, NJ 08102
      Counsel for Respondents

HILLMAN, District Judge

      Petitioner Juan C. Salas ("Petitioner"), a prisoner

presently incarcerated at New Jersey State Prison in Trenton,

New Jersey, has filed an Amended Petition for a Writ of Habeas

Corpus pursuant to 28 U.S.C. § 2254 (the "Amended Petition").

(ECF No. 12.)  By order of the Court, (ECF No. 21), Respondents

Charles Warren and the Attorney General for the State of New

Jersey ("Respondents") filed a full and complete Answer to the

Amended Petition (the "Answer"). (ECF No. 26.) Petitioner

filed a traverse to the Answer (the "Traverse").[1] (ECF No. 27.)

The Amended Petition is ripe for disposition. For the reasons

stated below, the Amended Petition will be denied.

## I.    FACTUAL BACKGROUND AND PROCEDURAL HSITORY

### a. State Court Proceedings

In its opinion on Petitioner's direct appeal, the New

Jersey Superior Court, Appellate Division set forth the

following facts underlying Petitioner's conviction:

> The State presented evidence that defendant
> and his companions took umbrage at the
> intrusion of others into what they deemed
> their territory in Camden for the sale of
> narcotics.  Their solution was to "clear the
> block."  This they did with a hail of
> bullets from at least five different
> weapons.  When the shooting ended, Richard
> Williams was dead and Jabbar Lee died

---

[1]    In the Traverse, Petitioner appears to address claims that
were not raised in the Amended Petition.  Specifically,
Petitioner raises several additional ineffective assistance of
counsel claims, including that his trial counsel was ineffective
for failing to investigate and failing to effectively present
the Miranda issues to the trial court; that his appellate
counsel was ineffective; and that his PCR counsel was
ineffective.  (ECF No. 27, at 11-12.)  These claims will not be
considered as a habeas petitioner cannot raise new claims in his
traverse.  See Johnson v. D'Ilio, No. 15-2641, 2018 WL 4442221,
*3 n.1 (D.N.J. Sept. 17, 2018); Judge v. United States, 119 F.
Supp. 3d 270, 284 (D.N.J. 2015) (extending doctrine that a
moving party may not raise new issues in a reply brief to
petitions for habeas relief because "[b]asic fairness requires
that an opposing party have a fair notice of his adversary's
claims, as well as an opportunity to address those claims"); see
also Cacoperdo v. Demosthenes, 37 F.3d 504, 507 (9th Cir. 1994)
("A Traverse is not the proper pleading to raise additional
grounds for relief.").

shortly thereafter.  David Williams (no
relation to Richard) had been shot in the
back, but he survived.  David testified, as
did Joseph Quinones.  Mr. Quinones had been
with defendant and his companions as they
planned what to do and saw them arm
themselves with weapons supplied by
defendant's uncle.  We infer from various
comments by counsel during the course of the
trial, in the absence of the jury, that
defendant's uncle was known as a narcotics
trafficker.

One of the guns used was a semiautomatic
rifle similar to an AK-47.  Police who
responded to the scene recovered more than
seventy shell casings and projectiles.
Investigator James Joyce of the New Jersey
State Police testified as an expert in
ballistics and firearm identification.
According to Investigator Joyce, at least
five separate guns were involved in the
incident, and there may have been as many as
eight.

Defendant was only seventeen years old at
the time of the shootings.  He was taken
into custody several months later and, in
the presence of his mother, supplied a
statement about his involvement in this
incident, which was played for the jury.
According to that statement, the shootings
were planned by Angel Mendoza, who recruited
defendant and his brother, Jose Egron.
Defendant in his statement said that Mendoza
supplied the guns, not defendant's uncle.
He said that Mendoza instructed him and his
brother to shoot at the victims, with the
expectation that they would run toward where
Mendoza would be stationed and that Mendoza
would kill them.  Defendant said in his
statement that he went along with the plan
because he was afraid of what Mendoza would
do to him if he did not.

Defendant testified at his trial and
recanted his statement.  He said he only

> gave the statement because the police would
> not let his mother leave until he did so.
> His mother testified to the same effect.
> Defendant testified he had no involvement
> with the shootings although he could not
> recall where he was when they occurred.

(ECF No. 26-10, at 2-4.)

Following a jury trial in March 2005, Petitioner was convicted of two counts of first-degree murder, N.J. Stat. Ann. §§ 2C:5-1, 2C:11-3(a)(1) and (2); one count of first-degree attempted murder, N.J. Stat. Ann. §§ 2C:5-1, 2C:11-3a(1) and (2); one count of first-degree conspiracy to commit murder, N.J. Stat. Ann. § 2C:5-2; one count of second-degree possession of a weapon for an unlawful purpose, N.J. Stat. Ann. § 2C:39-4a; one count of third-degree unlawful possession of a weapon, N.J. Stat. Ann. § 2C:39-5(b); and one count of third-degree hindering apprehension, N.J. Stat. Ann. § 2C:29-3(b)(1). (ECF No. 26-5.) At sentencing, the sentencing court merged the conviction for hindering apprehension with the convictions for murder and attempted murder. (Id.) The sentencing court thereafter sentenced Petitioner to a 40-year term of imprisonment, subject to an 85 percent parole disqualifier on the first count of murder; and a 30-year term of imprisonment with a 30-year term of parole ineligibility on the second count of murder, to run consecutive to the sentence imposed on the first count of murder. (Id.) The remainder of Petitioner's sentences were

ordered to run concurrent to the sentence on the first count of murder. (Id.)

Petitioner filed an appeal of his conviction to the Appellate Division in which he raised the following issues for review:

> **POINT I** DEFENDANT WAS DENIED A FAIR TRIAL AND DUE PROCESS OF LAW WHEN THE PROSECUTOR TOLD THE JURY DURING SUMMATION THAT MR. SALAS HAD GROWN UP IN A VIOLENT AND STRANGE CULTURE, THEREBY INFLUENCING THE JURY'S PERCEPTION OF MR. SALAS AS A VIOLENT AND STRANGE MAN, RATHER THAN AS A 17-YEAR-OLD JUVENILE.
>
> **POINT II** THE TRIAL COURT ERRED, AND CONSEQUENTLY IMPOSED AN EXCESSIVE SENTENCE, IN REFUSING TO ORDER CONCURRENT THE SENTENCES FOR THE FIRST-DEGREE MURDER CONVICTIONS AND IN IMPOSING GREATER THAN THE MINIMUM TERM UNDER THE NO EARLY RELEASE ACT.
>
> > A. The Trial Court Erred in Refusing to Order Concurrent Sentences for the Two First-Degree Murder Convictions
> >
> > B. The Sentence Was Manifestly Excessive.

(ECF No. 26-10, at 4.) The Appellate Division affirmed Petitioner's conviction and sentence on July 3, 2007. (Id. at 1, 7.) Petitioner did not immediately file a petition for certification to the New Jersey Supreme Court. However, on or about July 22, 2013, Petitioner filed a motion for leave to file a petition for certification as within time with the New Jersey Supreme Court. (ECF No. 26-32.) On September 17, 2013, the New

Jersey Supreme Court denied Petitioner's motion without explanation and dismissed the petition for certification. (ECF No. 26-33.)

On or about January 31, 2008, Petitioner filed his first petition for post-conviction relief ("First PCR") in the Superior Court of New Jersey, Law Division. (ECF No. 26-11.) In the First PCR, Petitioner alleged that he was denied the effective assistance of counsel in violation of the Sixth Amendment and that his due process right to a fair trial was violated as a result of various trial errors and prosecutorial misconduct. (Id. at 5.) On January 30, 2009, following oral argument, the Superior Court denied the First PCR on the record. (ECF No. 26-14.)

Petitioner appealed the denial of the First PCR to the Appellate Division, where he argued that he received ineffective assistance of counsel as a result of counsel's failure to investigate, failure to present a "meaningful trial strategy," failure to confer with Petitioner, and failure to adequately present a Miranda[2] issue to the trial court. (ECF No. 26-18, at 9.) Petitioner also argued that his PCR counsel was ineffective and that his statement to police was taken in violation of the Fifth Amendment and should have been suppressed at trial. (Id.)

---

[2]    Miranda v. Arizona, 384 U.S. 436 (1966).

The Appellate Division affirmed the denial of the First PCR.

(Id. at 13.)  Petitioner, acting pro se, moved for

reconsideration of that opinion on March 9, 2011.  (ECF No. 26-

19.)[3]

On March 9, 2011, Petitioner filed a motion to file a

petition for certification nunc pro tunc to the New Jersey

Supreme Court.  (ECF Nos. 26-21, 26-23.)  Petitioner raised the

same issues in his petition for certification that were raised

to the Appellate Division in the appeal of the First PCR.  (See

ECF No. 26-24.)  On April 21, 2011, the New Jersey Supreme Court

granted Petitioner's motion to file a petition for certification

nunc pro tunc.  (ECF No. 26-26.)  Shortly thereafter, on July

14, 2011, the Supreme Court of New Jersey denied the petition

for certification.  (ECF No. 26-27.)

It appears that sometime after certification was denied on

the First PCR, Petitioner filed a pro se motion for leave to

file a successive petition for post-conviction relief in the

Superior Court ("Second PCR").  (ECF No. 26-28.)  That motion

---

[3]    Instead of filing Petitioner's pro se motion for
reconsideration, the Clerk of the Appellate Division forwarded
the motion to the Office of the Public Defender, Petitioner's
counsel, "for whatever action they deem appropriate."  (ECF No.
26-20.)  It appears from the record that the motion was not re-
filed and that the Office of the Public Defender instead
proceeded with a petition for certification to the New Jersey
Supreme Court.

was denied on January 20, 2012.  (ECF No. 26-29.)  Petitioner did not file any appeal of that denial.

Petitioner filed a third petition for post-conviction relief ("Third PCR") on June 19, 2013, alleging that his sentence was in violation of the Supreme Court's decision in Miller v. Alabama, 567 U.S. 460 (2012).  (ECF No. 26-30.)  The Superior Court determined that the Third PCR was timely because it was filed within one year of the issuance of Miller, but ultimately denied relief on the merits.  (ECF No. 26-31, at 2-3.)  Petitioner appealed that decision to the Appellate Division, who affirmed the Superior Court's denial of the Third PCR on June 3, 2015.  (ECF No. 26-43.)  Petitioner filed a petition for certification of that decision, which the New Jersey Supreme Court denied on February 5, 2016.  (ECF No. 26-49.)

### b. Federal Habeas Proceedings

Petitioner first filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 with this Court on or about September 8, 2011 ("Salas-I").  (ECF No. 1.)  Because it was apparent that all of Petitioner's claims were not exhausted and because Petitioner indicated that he was pursuing the Second PCR, this Court granted Petitioner a stay and abeyance of the habeas proceeding.  (ECF No. 6.)

On June 19, 2012, Petitioner submitted a letter to this Court indicating that his Second PCR had been denied as untimely and that he wished to include that claims raised in his Second PCR in his petition for writ of habeas corpus. (ECF No. 8.) Thereafter, on or about July 11, 2012, Petitioner filed a second § 2254 petition, which gave rise to Petitioner's second habeas case, Salas v. Warren ("Salas-II"), No. 12-4275 (NLH) (D.N.J) (No. 12-4275, ECF No. 1). Upon recognizing that Salas-II was a duplicate of Salas-I, on April 26, 2013, this Court directed the Clerk to terminate Salas-II and elected to proceed solely with Petitioner's Salas-I action in order to eliminate any statute of limitations concerns. (ECF No. 9.)

In the Court's April 26 Order, it recognized that Petitioner wished to raise in his habeas petition:

> (a) all his state and federal law based challenges raised on direct appeal to the Appellate Division but not challenged before the Supreme Court of New Jersey; (b) all his state and federal law based challenges raised, during his first PCR, to the Law Division, Appellate Division and the Supreme Court of New Jersey; and (c) all his state and federal law based challenges raised and dismissed as untimely during his second PCR.

(ECF No. 9, at 4.) The Court advised Petitioner that he intended to raise claims which may have exceeded the scope of federal habeas review, notably that certain claims appeared to be facially unexhausted and procedurally defaulted. (Id. at 4-

14.)  The Court informed Petitioner that he may either withdraw these challenges or otherwise attempt to overcome the procedural bat by asserting facts warranting excuse of non-exhaustion and resolution of these claims on the merits.  (Id. at 15-16.)  The Court thus extended the stay in Salas-I to afford Petitioner the opportunity to make an informed decision on his petition and take any appropriate action in the state court.  (Id.)

In a letter dated July 12, 2013, Petitioner indicated that he wished to seek certification with respect to his unexhausted direct appellate claims.  (ECF No. 10.)

On or about April 11, 2016, Petitioner submitted a third § 2254 petition, giving rise to the case Salas v. Johnson, No. 16-2018 (NLH) (D.N.J.) ("Salas-III").  (No. 16-2018, ECF No. 1.)  Because Salas-III challenged the same conviction as Salas-I, this Court, in an order dated May 19, 2016, directed the Clerk of the Court to terminate Salas-III and proceeded solely with Petitioner's Salas-I action.  (ECF No. 11.)  The election in favor of Salas-I was made to eliminate any statute of limitation concerns.  See Urcinoli v. Cathel, 546 F.3d 269, 272 (3d Cir. 2008).  Additionally, the Clerk of the Court was directed to refund Petitioner the $5 paid in connection with Salas-III. Finally, because the Salas-III petition apparently raised only one claim for relief, this Court afforded Petitioner one final

10

opportunity to submit an amended petition setting forth all exhausted claims he wished to raise.  (ECF No. 11.)

On June 20, 2016, Petitioner filed an amended petition representing his one all-inclusive petition.  (ECF No. 12.) Because of the complicated procedural history of this matter, this Court directed Respondents to file a limited answer as to the issue of exhaustion.  (ECF No. 13.)  Respondents filed their limited answer on September 26, 2016.  (ECF No. 17.)  Petitioner thereafter filed a reply.  (ECF No. 20.)

On March 4, 2019, this Court ordered Respondents to file a full and complete answer to the Amended Petition.  (ECF No. 21.) Respondents filed their full and complete answer on June 7, 2019.  (ECF No. 26.)  Petitioner filed a traverse on July 11, 2019.  (ECF No. 27.)

## II.  LEGAL STANDARD

A petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 is the proper mechanism for a state prisoner to challenge the fact or duration of his confinement where the petitioner claims his custody is in violation of the Constitution or the laws of the United States. See 28 U.S.C. § 2254(a); Cullen v. Pinholster, 563 U.S. 170, 181 (2011); Preiser v. Rodriquez, 411 U.S. 475, 498-99 (1973).  A habeas petitioner bears the burden of establishing his entitlement to relief for each claim

presented in the petition. See Harrington v. Richter, 562 U.S. 86, 98 (2011).

The standard used in reviewing habeas claims under § 2254 depends on whether those claims have been adjudicated on the merits by the state court. If they have not been adjudicated on the merits, the Court reviews de novo both legal questions and mixed factual and legal questions. See Appel v. Horn, 250 F.3d 203, 210 (3d Cir. 2001). If the state court adjudicated the claim on the merits, then 2254(d) limits the review of the state court's decision as follows:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding . . . .

28 U.S.C. § 2254(d).  If a claim has been adjudicated on the merits in state court,[4] this Court has "no authority to issue the writ of habeas corpus unless the [state court's] decision 'was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States,' or 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" Parker v. Matthews, 567 U.S. 37, 40 (2012) (quoting 28 U.S.C. § 2254(d)).

A court begins the analysis under § 2254(d)(1) by determining the relevant law clearly established by the Supreme Court. See Yarborough v. Alvarado, 541 U.S. 652, 660 (2004). Clearly established law "refers to the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Williams v. Taylor, 529 U.S.

---

[4] "[A] claim has been adjudicated on the merits in State court proceedings when a state court has made a decision that finally resolves the claim based on its substance, not on a procedural, or other, ground." Lewis v. Horn, 581 F.3d 92, 100 (3d Cir. 2009) (quoting Thomas v. Horn, 570 F.3d 105, 117 (3d Cir. 2009)). "Section 2254(d) applies even where there has been a summary denial." Pinholster, 563 U.S. at 187. "In these circumstances, [petitioner] can satisfy the 'unreasonable application' prong of § 2254(d)(1) only by showing that 'there was no reasonable basis' for the [state court's] decision." Id. (quoting Harrington v. Richter, 562 U.S. 86, 98 (2011); see also Johnson v. Williams, 568 U.S. 289, 301 (2013) ("When a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits – but that presumption can in some limited circumstances be rebutted.").

362, 412 (2000).  A court must look for "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Lockyer v. Andrade, 538 U.S. 63, 71-72 (2003).  "[C]ircuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court,' [and] therefore cannot form the basis for habeas relief under AEDPA." Parker, 567 U.S. at 48-49 (quoting 28 U.S.C. § 2254(d)(1)).

A decision is "contrary to" a Supreme Court holding within 28 U.S.C. § 2254(d)(1), if the state court applies a rule that "contradicts the governing law set forth in [the Supreme Court's] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a [different result.]" Williams, 529 U.S. at 405-06.  Under the " 'unreasonable application' clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.  "[A]n unreasonable application of federal law," however, "is different from an incorrect application of federal law." Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Williams, 529 U.S. at 410).

**III. DISCUSSION**

Prior to addressing the merits of the Amended Petition, the Court notes that certain of Petitioner's claims appear to be unexhausted. See 28 U.S.C. § 2254(b)(1)(A)(requiring that a habeas petitioner exhaust "the remedies available in the courts of the States" before seeking federal habeas relief"); Rhines v. Weber, 544 U.S. 269, 273–76 (2005); Lambert v. Blackwell, 134 F.3d 506, 513 (3d Cir. 1997). Respondents argued in their Limited Answer that the Amended Petition should be dismissed as a mixed petition, i.e., a petition containing a mix of exhausted and unexhausted claims. Accord Rose v. Lundy, 455 U.S. 509, 510 (1982). The Court declines to dismiss the Amended Petition for failure to exhaust state remedies and will instead deny the Amended Petition on the merits pursuant to § 2254(b)(2). See Mahoney v. Bostel, 366 F. App'x 368, 371 (3d Cir. 2010).

### a. Grounds One, Two, Three, and Four

### i. Procedural Default

Respondents, in their Limited Answer, argue that Grounds One, Two, Three, and Four of the Amended Petition are procedurally defaulted because they were denied by the New Jersey Supreme Court on state procedural grounds. (ECF No. 17, at 28–29.) Grounds One, Two, Three, and Four of the Amended Petition are the same claims raised by Petitioner in his direct appeal. (See ECF No. 26-10, at 4.) Petitioner duly exhausted

15

these claims in state court, but he failed to file a timely

petition for certification to the New Jersey Supreme Court.

Instead, Petitioner filed a motion for leave to file a petition

for certification as within time on July 22, 2013, nearly 6

years after the Appellate Division denied his appeal. (See ECF

No. 18-1.)  In an unexplained order, the New Jersey Supreme

Court denied Petitioner's motion to file a petition for

certification as within time and dismissed his appeal. (ECF No.

26-33.)

Procedural default occurs where "a state court declined to

address a prisoner's federal claims because the prisoner failed

to meet a state procedural requirement." Lark v. Sec'y Pa.

Dep't of Corrs., 645 F.3d 596, 611 (3d Cir. 2011) (quoting

Coleman v. Thompson, 501 U.S. 722, 730 (1991)).  In other words,

where the state court dismissed petitioner's federal claims

pursuant to an "independent" and "adequate" state procedural

ground, federal habeas corpus review is not available. See id.

If the state law ground was not "independent" and "adequate," a

federal court may review petitioner's claims on the merits.  Id.

> A state procedural rule is an inadequate
> ground to bar federal review if it was not
> firmly established and regularly followed by
> the state courts at the time it was applied.
> Whether a procedural rule "was firmly
> established and regularly applied is
> determined as of the date the default
> occurred, and not as of the date the state
> court relied on it, because a petitioner is

>           entitled to notice of how to present a claim
>           in state court."

Id. (citations omitted) (quoting Albrecht v. Horn, 485 F.3d 103,

115 (3d Cir. 2007)).

The Third Circuit has explained "that an adequate

procedural ground is predicated on procedural rules that speak

in unmistakable terms." Cabrera v. Barbo, 175 F.3d 307, 313 (3d

Cir. 1999). Critically, "the procedural disposition must

comport with similar decisions in other cases so there is a

firmly established rule that is applied in a consistent and

regular manner in the vast majority of the cases" and the rule

must have been in place at the time of the state court

procedural default. Id.

Generally, courts will look to the last-reasoned opinion of

the state court to determine whether a claim was denied pursuant

to an independent and adequate state law ground. Ylst v.

Nunnemaker, 501 U.S. 797, 802 (1991). In Ylst, the Supreme

Court held that "[w]here there has been one reasoned state

judgment rejecting a federal claim, later unexplained orders

upholding that judgment or rejecting the same claim rest upon

the same ground." Id. Under Ylst, "[i]f an earlier opinion

'fairly appear[s] to rest primarily on federal law,' we will

presume that no procedural default has been invoked by a

subsequent unexplained order that leaves the judgment or its

17

consequences in place." Id. (quoting Coleman, 501 U.S. at 740).

This presumption, however, is not irrebuttable and may be refuted by "strong evidence." Id. at 804. For example, the Ylst court explained that "it might be shown that, even though the last reasoned state-court opinion had relied upon a federal ground, the later appeal to the court that issued the unexplained order was plainly out of time, and that the latter court did not ordinarily waive such a procedural default without saying so." Id.

In Caswell v. Ryan, 953 F.2d 853 (3d Cir. 1992), the Third Circuit considered whether an unexplained order from the Pennsylvania Supreme Court denying a petitioner's motion to proceed nunc pro tunc was based on state procedural grounds or whether it was required to "look through" to the lower court's decision on the merits. Relying on the hypothetical set forth in Ylst, the Third Circuit determined that petitioner's claim was procedurally barred because his motion to the Pennsylvania Supreme Court was, in fact, untimely, and "the Pennsylvania Supreme Court does not ordinarily waive this type of procedural default." Id. at 860.

The situation here mirrors that of Caswell. The direct appeal claims were originally denied by the Appellate Division on the merits. (See ECF No. 26-10.) Thereafter, Petitioner's motion to file a petition for certification as within time was

denied by the New Jersey Supreme Court without explanation and his petition was dismissed. (ECF No. 26-33.) Petitioner's application to the New Jersey Supreme Court was filed well outside the twenty-day limit for filing a petition for certification, N.J. Ct. R. 2:12-3(a), approximately six years from the entry of the Appellate Division's decision affirming his conviction. (See ECF No. 26-32.) Because it is plainly evident that Petitioner's application to the New Jersey Supreme Court was untimely and there is no indication that the New Jersey Supreme Court does not strictly enforce its timeliness requirements, the presumption set forth in Ylst does not apply here. See Caswell, 953 F.2d at 860; see also Hull v. Freeman, 991 F.2d 86, 90-91 (3d Cir. 1993); Smith v. Arvonio, Civ. A. No. 93-25, 1994 WL 327123, at *6 (D.N.J. June 24, 1994); Lotwich v. Neubert, Civ. No. 90-4689, 1991 WL 167025, at *5 (D.N.J. Aug. 23, 1991).

The New Jersey Court's timely filing requirements are an "independent and adequate" state law ground, see Smith, 1994 WL 327123, at *6, and, thus, Grounds One, Two, Three, and Four of the Amended Petition have been procedurally defaulted.

Procedural default of a petitioner's claims may, however, be excused where the petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to

consider the claims will result in a fundamental miscarriage of justice." Cristin v. Brennan, 281 F.3d 404, 412 (3d Cir. 2002) (quoting Coleman, 501 U.S. at 750). Petitioner has offered no reason why his procedural default of these claims should be excused under the cause and prejudice standard.

Accordingly, Grounds One, Two, Three, and Four of the Amended Petition are subject to dismissal with prejudice pursuant to the doctrine of procedural default.

### ii. Merits of Grounds One, Two, Three, and Four

While the Court finds that Grounds One, Two, Three, and Four have been procedurally defaulted, it will, alternatively, deny the claims on the merits as well.

### 1. Ground One

In Ground One, Petitioner claims that his right to due process under the federal constitution was violated by statements made by the prosecutor during trial that Petitioner "[grew] up in a violent and strange culture, thereby influencing the jury's perception of [Petitioner] as a violent and strange man, rather than as a 17 year old juvenile." (ECF No. 12, at 7.) Respondents argue that the state court's ruling on this claim "was consistent with federal law on prosecutorial misconduct and was based on a reasonable determination of the facts in light of the evidence presented at trial." (ECF No. 26, at 42.) Moreover, Respondents maintain that Petitioner has

failed to show that the comments made by the prosecutor caused him any prejudice.  (Id. at 43.)

It appears that Petitioner takes issue with the same statements made by the prosecutor as he did on direct appeal. (See ECF No. 27, 6–7.)  In the prosecutor's opening statement, she made the following remarks:

> The scene is going to tell you.  You will
> see the shell casings that were recovered
> from that street.  You will see the
> photographs of that scene, that street that
> had become a battlefield.  These shootings,
> the murders of Richard Williams and Jabar
> Lee and the attempted murder of David
> Williams, this case, this trial is going to
> take you into a world that is different from
> your own and into a value system that is
> different from your own.

(ECF No. 26-52, at 27–28.)  Thereafter, in her summation, the prosecutor stated:

> As Joseph Quinones told you, he wasn't in
> any real hurry to leave.  He wanted to see
> that big gun get fired.  He wanted to hand
> around because, as he told you, he didn't
> care.  That's his value system.  It is alien
> to each of us, but that's his world, that's
> this world, and that's their world.

(ECF No. 26-55, at 51–52.)

The Appellate Division denied this claim, explaining

> We have carefully reviewed this trial record
> and in our judgment the evidence presented
> against defendant can fairly be described as
> overwhelming.  Although the prosecutor
> should not have attempted to create for the
> jury a view of the defendant as alien from
> themselves, we are unable to conclude that

21

> these brief remarks, to which no objection
> was made, had the capacity to by themselves
> poison the jury against defendant.

(ECF No. 26-10, at 6.)

Federal habeas relief may only be obtained on the basis of prosecutorial misconduct where the misconduct "so infect[ed] the trial with unfairness as to make the resulting conviction a denial of due process." Werts v. Vaughn, 228 F.3d 178, 197 (3d Cir. 2000) (quoting Greer v. Miller, 483 U.S. 756, 765 (1987)). In evaluating whether the remarks of the prosecutor rise to the level of a constitutional violation, "Supreme Court precedent requires the reviewing court to weigh the prosecutor's conduct, the effect of the curative instructions and the strength of the evidence." Moore v. Morton, 255 F.3d 95, 107 (3d Cir. 2001) (citing Darden v. Wainwright, 477 U.S. 168, 182 (1986)); see also Werts, 228 F.3d at 198 ("The remarks must be sufficiently prejudicial in the context of the entire trial to violate a petitioner's due process rights.").

Here, considering the entire trial record in this context, the Court does not find that the prosecutor's remarks "so infect[ed] the trial with unfairness as to make the resulting conviction a denial of due process." See Greer, 483 U.S. at 765 (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974)). The trial court properly instructed the jury before the prosecutor's summation that "[w]hatever the attorneys say to you

in their closing is not evidence; it's their recollection of the
evidence.  However, members of the jury, it's your recollection
of the evidence that should control in rendering a verdict in
this matter." (ECF No. 26-55, at 21.)  The trial court again
instructed the jury following summations that "[a]ny arguments,
statements, remarks, the opening and closings of counsel are not
evidence and must not be treated by evidence." (Id. at 69.)
Moreover, the evidence presented against Petitioner at trial
was, as the Appellate Division noted, overwhelming.  (ECF No.
26-10, at 6.)  Petitioner admitted to law enforcement that he
participated in the shooting.  (Id. at 3.)  Quinones testified
that he saw Petitioner with a handgun shortly before the
shootings.  (ECF No. 26-53, at 70-72.)  The Appellate Division's
adjudication of this claim was not an unreasonable application
of federal law and, thus, Petitioner is not entitled to habeas
relief on this claim.

## 2. Grounds Two, Three, and Four

The Court considers Grounds Two, Three, and Four of the
Amended Petition together as they all pertain to Petitioner's
sentence.  Specifically, Petitioner contends that his sentence
is manifestly excessive and in violation of the Eighth Amendment
because the trial court refused to order concurrent sentences
for the two first-degree murder convictions.  (ECF No. 12, at 7-
8.)  The Appellate Division denied these challenges to

Petitioner's sentence, finding that "the trial court put a comprehensive statement on the record setting forth its reasons for determining that defendant must serve consecutive terms for the two murders" and that the trial court did not abuse its discretionary sentencing power.  (ECF No. 26-10, at 7.)

A federal court's ability to review state sentences is limited to challenges based upon "proscribed federal grounds such as being cruel and unusual, racially or ethnically motivated, or enhanced by indigency."  See Grecco v. O'Lone, 661 F. Supp. 408, 415 (D.N.J. 1987) (citation omitted).  Thus, a challenge to a state court's discretion at sentencing is not reviewable in a federal habeas proceeding unless it violates a separate federal constitutional limitation.  See 28 U.S.C. § 2254(a); Estelle v. McGuire, 502 U.S. 62, 67 (1991); Lewis v. Jeffers, 497 U.S. 764, 780 (1990).

A sentence for a term of years may violate the Eighth Amendment where it is "'grossly disproportionate to the crime.'" Graham v. Florida, 560 U.S. 48, 60 (2010) (quoting Harmelin v. Michigan, 501 U.S. 957, 997 (1991) (Kennedy, J., concurring in part)).  This principle, however, "reserves a constitutional violation for only the extraordinary case."  Lockyer v. Andrade, 538 U.S. 63, 77 (2003); see also Ewing v. California, 538 U.S. 11, 21 (2003) (noting that outside of capital cases, "successful challenges to the proportionality of particular sentences have

24

been exceedingly rare" (quoting Rummel v. Estelle, 445 U.S. 263, 272 (1980))). For example, in Lockyer, the Supreme Court held that a sentence of two consecutive terms of 25 to life in prison for two counts of petty theft pursuant to California's three strikes law did not violate the Eighth Amendment. See id. at 68, 77.

The Appellate Division's resolution of Petitioner's challenges to his sentence were not contrary to this federal precedent. Petitioner's sentence of consecutive 40- and 30-year terms of imprisonment for two counts of first-degree murder are not violative of the Eighth Amendment. Accordingly, relief on this claim is denied.

### b. Ground Five

In Ground Five of the Amended Petition, Petitioner alleges violations of his Sixth Amendment right to the effective assistance of counsel. (ECF No. 12, at 8.)[5] Specifically, Petitioner claims that his counsel was ineffective because he

---

[5]    Respondents concede, and the record reflects, that Petitioner's claims related to his counsel's alleged failure to confer with Petitioner or present a defense at trial were presented at each level of state court review. (ECF No. 17, at 30.) However, Respondents argue that Petitioner's claim that his trial counsel was ineffective for failing to file a motion to suppress is unexhausted "to the extent that petitioner's allegation . . . refers to evidence other than his statement to police." (Id.) Petitioner does not indicate in his Petition or Traverse to what evidence this claim refers. Accordingly, the Court will treat the claim as unexhausted.

failed to confer with Petitioner, failed to file a motion to suppress, and failed to present any defense at trial.  (Id.) These claims were originally raised in Petitioner's First PCR.

The Sixth Amendment of the United States Constitution provides:  "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI.  The Supreme Court has recognized that "the right to counsel is the right to the effective assistance of counsel." Strickland v. Washington, 466 U.S. 668, 686 (1984) (quoting McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970)).  A showing of ineffective assistance of counsel requires two components to succeed.  Id. at 687.  The two requisite proofs are as follows:  (1) a defendant must show that counsel's performance was deficient; and (2) the defendant must show prejudice.  Id.  The analysis is underpinned by an understanding that counsel's role is to ensure the production of a reliably just result with the adversarial process of trial. Id.

When a convicted defendant complains of deficient performance, the defendant's burden of proof is to show that the conduct of counsel fell below an objective standard of reasonableness.  Id. at 688.  Hence, [j]udicial scrutiny of counsel's performance must be highly deferential." Id. at 689. To combat the natural tendency for a reviewing court to

speculate whether a different strategy at trial may have been more effective, the Supreme Court has "adopted the rule of contemporary assessment of counsel's conduct." Maryland v. Kulbicki, 136 S. Ct. 2, 4 (2015) (quoting Lockhart v. Fretwell, 506 U.S. 364, 372 (1993)).  Thus, when reviewing for an ineffective assistance of counsel, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Woods, 135 S. Ct. at 1375 (quoting Strickland, 466 U.S. at 689); cf. United States v. Chronic, 466 U.S. 648, 659 (1984) (holding that courts may presume deficient performance and resulting prejudice if a defendant "is denied counsel at a critical stage of his trial").

    Because Petitioner's ineffective assistance of counsel claims are raised through a § 2254 petition, federal "review must be 'doubly deferential' in order to afford 'both the state court and the defense attorney the benefit of the doubt.'" Woods, 135 S. Ct. at 1376 (quoting Burt v. Titlow, 134 S. Ct. 10, 13 (2013)); see also Cullen, 563 U.S. at 190 ("[R]eview of the [State] Supreme Court's decision is thus doubly deferential."); Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) ("[D]oubly deferential judicial review applies to a Strickland claim evaluated under the § 2254(d)(1) standard . . . ."); Yarborough, 541 U.S. at 6 ("Judicial review of a defense attorney ... is therefore highly deferential--and doubly

deferential when it is conducted through the lens of federal habeas."). Indeed, "[w]hen § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Harrington, 562 U.S. at 105.

As to proving prejudice under Strickland, "actual ineffectiveness claims alleging a deficiency in attorney performance are subject to a general requirement that the defendant affirmatively prove prejudice." 466 U.S. at 693. To succeed on this proof, a defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Hinton v. Alabama, 134 S. Ct. 1081, 1088 (2014) (quoting Padilla v. Kentucky, 559 U.S. 356, 366 (2010)). A reasonable probability is a probability which sufficiently undermines confidence in the outcome of the trial. Strickland, 466 U.S. at 694.

### i. Failure to Confer

Petitioner first asserts that his trial counsel was ineffective because he failed to confer with Petitioner. (ECF No. 12, at 8.) Petitioner does not elaborate as to how or when his counsel failed to confer with him. (Id.) Petitioner raised a similar claim in his First PCR, in which he alleged that his trial counsel only met with him once before trial. (ECF No. 26-

58, at 28.)  The Superior Court denied this claim, finding that
Petitioner's allegation that his counsel conferred with him only
once prior to trial did "not ring true," noting the many times
Petitioner and his counsel met and appeared in court prior to
trial.  (Id. at 28-29.)  The Superior Court further observed
that billing records indicated that Petitioner met with his
trial on at least four occasions prior to trial.  (Id.)  The
Appellate Division affirmed this decision without discussion.
(ECF No. 26-18, at 11.)

The decision of the Superior court is neither contrary to
nor an unreasonable application of Strickland.  The Superior
Court found that, contrary to Petitioner's allegation, he had
multiple opportunities to confer with counsel prior to trial.
Because Petitioner's claim was unsupported by the record, the
Superior Court reasonably concluded that he "could not establish
either ineffective assistance, or prejudice."  (ECF No. 26-58,
at 29.)  Petitioner has made no attempt to refute the Superior
Court's factual determination that he indeed conferred with his
counsel multiple times before trial.  See § 2254(e)(1) (setting
forth that factual findings of the state court are "presumed to
be correct").  Accordingly, relief on this claim is denied.

## ii. Failure to File a Motion to Suppress

Petitioner claims that his trial counsel was ineffective
for failing to file a motion to suppress.  (ECF No. 12, at 8.)

29

Petitioner does not indicate in the Amended Petition what evidence his counsel should have moved to suppress.  (See id.) While pro se filings are liberally construed, "[a] habeas petitioner bears the burden of articulating his allegations clearly."  Best v. Ecker, No. 15-2361, 2016 WL 8730900, at *9 (E.D. Pa. June 17, 2016) (citing Zettlemoyer v. Fulcomer, 923 F.2d 284, 298 (3d Cir. 1991)).  Indeed, a petitioner is required to "state the facts supporting each ground" presented for relief.  Mayle v. Felix, 545 U.S. 644, 655 (3d Cir. 2005).  As Petitioner has not indicated what evidence his counsel should have moved to suppress or provided any other factual support for this claim, it is denied.

### iii. Failure to Present a Defense

Petitioner also asserts that his trial counsel was ineffective as he failed to present a defense or meaningful trial strategy.  (ECF No. 12, at 8.)  The Superior Court denied this claim, finding that Petitioner's claim was "contrary to the trial record."  The Superior court recounted the many ways in which counsel presented a defense at trial, noting that "[d]efense counsel sought to establish the Defendant's credibility, and undermine the credibility of the evidence against the Defendant."  (ECF No. 26-58, at 31-34.)  The Superior court then recounted how defense counsel employed that strategy at trial.  (Id.)  The Appellate Division affirmed the

decision of the Superior court without explanation.  (ECF No. 26-18, at 11.)

The Superior Court's analysis of this claim was neither contrary to nor an unreasonable application of Strickland.  The Superior Court reviewed the trial record and determined that trial counsel, in fact, presented a cogent defense at trial. Because Petitioner has not demonstrated that trial counsel was deficient in this regard, his claim under Strickland fails. Relief on this claim is therefore denied.

### c. Ground Six

In Ground Six, Petitioner asserts that his due process rights under the Fourteenth Amendment were violated as a result of "multiple instances of prosecutorial misconduct and errors committed by the trial court."  (ECF No. 12, at 8.)  Instead of providing any facts to support this claim, Petitioner asserts other unrelated claims, stating that:

> The Court erred in not granting Petitioner
> an evidentiary hearing on his PCR petition,
> Petition for Post-Conviction Relief was not
> procedurally barred, Petitioner was denied
> his right to the effective assistance of
> Counsel guaranteed by both the United States
> and New Jersey Constitution, Petitioner's
> statement to police was taken in violation
> of his rights against self-incrimination and
> rights afforded juveniles and should have
> been suppressed.

(Id.)  The Court construes Petitioner as raising the following claims for relief:  (1) that prosecutorial misconduct at trial

31

violated his rights under the Fourteenth Amendment, (2) that the Superior Court erred in denying the First PCR without an evidentiary hearing, (3) that the First PCR was not procedurally barred, and (4) that Petitioner's statement to law enforcement was taken in violation of his Fifth Amendment rights under Miranda. (See id.)[6] These claims are similar to those raised by Petitioner in the appeal of the First PCR. (See ECF No. 26-18, at 9.)

While Petitioner does not provide any factual support for his claim of prosecutorial misconduct in Ground Six, the Court construes this claim as duplicative of the prosecutorial misconduct claim raised in Ground One of the Amended Petition and will deny the claim for the same reasons. See supra, at 20–23.

Petitioner's claims that the Superior Court erred in not granting an evidentiary hearing and in finding that the First PCR was procedurally barred are also denied. These claims relate only to the application of state law and are thus not cognizable on a § 2254 petition. Estelle v. McGuire, 502 U.S. 62, 66 (1991) (observing that "federal habeas corpus relief does not lie for errors of state law" (quoting Lewis v. Jeffers, 497

---

[6]     Petitioner appears to attempt to bring a claim of ineffective assistance of counsel in Ground Six. However, he fails to proffer any basis for this claim, preventing the Court from considering any such claim.

U.S. 764, 780 (1990))); see also Lambert v. Blackwell, 387 F.3d 210, 247 (3d Cir. 2004) (admonishing that "alleged errors in collateral proceedings . . . are not a proper basis for habeas relief from the original conviction").

Finally, Petitioner is not entitled to relief on his claim that the statement he gave to law enforcement was taken in violation of Miranda. Petitioner claims that his "statement to police was taken in violation of his rights against self-incrimination and rights afforded juveniles and should have been suppressed."

Prior to trial, a hearing was held to determine whether Petitioner's statement to law enforcement complied with the strictures of Miranda. (ECF No. 26-50.) At that hearing, the trial court made the following findings regarding Petitioner's statement:

> In this case, the defendant is a 17-year-old
> male and his mother was present during the
> police questioning. Before the questioning,
> the mother also signed a consent form as a
> witness. His mother . . . was present during
> the questioning, interjected, asked
> questions, told him that – what he
> remembered. I'm satisfied that he was given
> the opportunity to have his parent or
> guardian present.
>
> . . .
>
> The total questioning of the defendant was
> approximately 90 minutes. There's no
> evidence that's been shown to the court that
> his will was broken in any way.

. . .

The defendant was given his Miranda warnings
on two separate occasions in the presence of
his mother, and at no time during the
interview did he make any attempt to invoke
his rights to remain silent and his right to
have an attorney present during the
interview.  Further, the defendant
specifically stated that he understood his
Miranda warnings.  And only after that did he
give his statement.

I'm satisfied in this case that the fact that
defendant did not sign the Miranda warning
sheet does not have any effect in any way.
The question is was he given his rights, did
he understand them?  I'm satisfied he did.
And the fact that an oversight that it was
not signed is not material.

. . .

It's clear that the defendant was not subject
to repeated questions or physical or mental
abuse.  It's clear also that the participants
on the tape spoke in a relaxed manner and
they were not aggressive toward this
defendant.  Therefore, based upon the
totality of the circumstances, I find there
was no evidence present defendant was subject
to any duress.

The State has presented evidence to the court
that the police complied with Miranda v.
Arizona and the New Jersey cases and the
heightened requirements of juvenile
statements to have an adult guardian or
parent present.  For all these reasons, I
find that defendant's motion to suppress the
statement in this matter is denied.

(Id. at 44-45.)

Petitioner did not challenge the trial court's

determination on direct appeal and did not raise this issue

until his appeal of the First PCR.[7]  The Appellate Division found

that this claim was procedurally barred under New Jersey Court

Rule 3:22-4(a) because it should have been raised on direct

review.[8]  (ECF No. 26-18, at 12.)  Nevertheless, the Appellate

Division additionally denied the claim on the merits:

> As is evident from the record of the <u>Miranda</u>
> hearing, Judge Natal thoroughly reviewed the
> evidence presented, made detailed
> credibility findings, and provided sound
> reasons for concluding that the State had
> proved beyond a reasonable doubt that
> defendant's statement to police was provided
> with a knowing and voluntary waiver of his
> right to remain silent.
>
> Defendant now maintains that the statement
> should have been suppressed because no
> attorney was present with defendant when he
> gave his statement.  The record
> demonstrates, and Judge Natal found, that
> defendant was fully advised of his right to
> an attorney and knowingly and voluntarily
> chose to waive that right.  Nothing
> presented by defendant causes us to question
> the soundness of the ruling Judge Natal made
> when he denied defendant's motion to
> suppress his statement.

---

[7]   This claim appears unexhausted because it was not presented
to the Superior Court prior to Petitioner raising it on appeal.
To properly exhaust a claim for habeas review, a petitioner is
required to invoke "a complete round of the State's established
appellate review process." <u>O'Sullivan v. Boerckel</u>, 526 U.S.
838, 845 (1999).  Accordingly, the Court's review of the claim
is de novo.  <u>Appel</u>, 250 F.3d at 210.

[8]   Despite the Appellate Division's denial of this claim on
state procedural grounds, Respondents did not argue that this
claim is procedurally defaulted.  The Court declines to raise
that issue <u>sua</u> <u>sponte</u>.

(<u>Id.</u> at 18–19.)

The Fifth Amendment to the United States constitution provides in part "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." <u>U.S. Const.</u> amend. V. In <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966), the Supreme Court held that in order to protect an accused's Fifth Amendment right against self-incrimination during the inherently coercive custodial interrogation setting, certain procedural safeguards must be employed. These safeguards include the explicit warning that the accused "has the right to remain silent, that anything he says can be used against him in a court of law, that he was the right to the presence of an attorney, and that if he cannot afford an attorney, one will be appointed for him prior to any questioning if he so desires." <u>Id.</u> at 479.

After this explicit warning is provided, a suspect may knowingly, intelligently, and voluntarily waive his rights. <u>Michigan v. Mosley</u>, 423 U.S. 96, 108 (1975). The question of whether a suspect knowingly and voluntarily waived his rights requires "an inquiry into the totality of the circumstances surrounding the interrogation, to ascertain whether the accused in fact knowingly and voluntarily decided to forego his rights to remain silent and to have the assistance of counsel." <u>Fare v. Michael C.</u>, 442 U.S. 707, 724–25 (1979). The Supreme Court

has held that the same inquiry applies where a suspect is a
juvenile and has instructed that the totality of the
circumstances inquiry mandates "inquiry into all the
circumstances surrounding the interrogation," including
"evaluation of the juvenile's age, experience, education,
background, intelligence, and into whether he has the capacity
to understand the warnings given to him, the nature of his Fifth
Amendment rights, and the consequences of waiving those rights."
Id. at 725.

Relying on the factual findings of the trial court,[9] the
Court finds that Petitioner's statement was not taken in
violation of Miranda. Petitioner was informed of his Miranda
warnings twice before his statement was taken and he
"specifically stated that he understood his Miranda warnings."
(ECF No. 26-50, at 44–45.) Indeed, review of Petitioner's
statement demonstrates that prior to beginning the interview,
the interviewing officer confirmed that Petitioner understood
each of his Miranda rights and explained that Petitioner could
end the interview at any time. (ECF No. 26-16, at 100–01.) At
no point did Petitioner invoke those rights during the 90-minute

---

[9] While the Court's review of this unexhausted claim is de
novo, the presumption of correctness afforded to the findings of
the state court remains in effect. Collins v. Sec'y Dept. of
Corrs., 742 F.3d 528, 544 n.9 (3d Cir. 2014).

interview.  (See id. at 100-19.)

The trial court additionally made findings regarding Petitioner's ability to understand the nature of his rights and the consequences of waiving those rights.  The trial court observed:

> In this case, we have a 17-year-old defendant who has completed the tenth grade education.  He is familiar with the criminal justice system, based upon the criminal records that were presented to the court showing numerous adjudications in the juvenile system, and there was nothing to show that there was any intoxication or any mental defect that would affect his ability to think clearly.

(ECF No. 26-50, at 42.)

The totality of the circumstances of Petitioner's interrogation demonstrates that he knowingly and voluntarily waived his Miranda rights.  Petitioner was properly informed of his rights prior to the interview and affirmatively stated that he understood those rights.  Thus, because the Court finds that Petitioner's statement was not taken in violation of Miranda, relief on this claim is denied.

### d. Ground Seven

In Ground Seven of the Amended Petition, Petitioner alleges that his sentence is in violation of the Eighth and Fourteenth Amendments.  It appears that Petitioner's claim is based on the Supreme Court's decision in Miller v. Alabama, 567 U.S. 460

(2012), which held that mandatory life sentences without the
possibility of parole for juvenile offenders violate the Eighth
Amendment of the Constitution.  Petitioner claims that his
aggregate seventy-year sentence for a crime committed while he
was a minor constitutes an unconstitutional "de facto life
sentence for a juvenile."  (ECF No. 12, at 8.)  Petitioner
further asserts that his youth was not properly considered by
the trial judge at sentencing.  (Id.)  Respondents argue that
the state court reasonably applied Miller to Petitioner's
sentence.  (ECF No. 26, at 72–76.)

     Petitioner raised this claim is his Third PCR.  On appeal,
the Appellate Division affirmed the Superior Court's denial of
his petition.  (ECF No. 26-43.)  The Appellate Division agreed
with the Superior Court that Petitioner's case was
distinguishable from Miller.  (Id. at 5–6.)  The Appellate
Division explained that the sentence at issue in Miller was a
mandatory life sentence without the possibility of parole
imposed on a defendant who was a minor at the time the crime was
committed.  (Id.)  Petitioner's sentence, conversely, was not a
mandatory life sentence and permits him to be eligible for
parole after 64 years.  (Id.)  The Appellate Division further
noted that

               Miller only addressed those sentences,
               unlike here, where the youth of the offender
               was not considered at sentencing, and the

> Court rejected a "categorical bar on life
> without parole for juveniles." Contrary to
> defendant's contentions, the judge did
> consider defendant's youth at sentencing.
> The judge noted that defendant had already
> incurred an extensive juvenile record and
> addressed mitigating factor thirteen, which
> requires the sentencing court to consider
> whether "[t]he conduct of a youthful
> defendant was substantially influenced by
> another person more mature than the
> defendant. The judge declined to find this
> mitigating factor because "defendant and his
> contemporaries in age were the ones who
> committed the offense."

(ECF No. 26-43, at 6 (citations omitted) (first quoting _Miller_,

567 U.S. at 479-80; then quoting N.J. Stat. Ann. 2C:44-1b(13)).

In _Miller_, the Supreme Court held that "a sentencing scheme

that mandates life in prison without possibility of parole for

juvenile offenders" violates the Eighth Amendment's prohibition

of cruel and unusual punishment. 567 U.S. at 479. The Supreme

Court found such schemes unconstitutional because they pose a

significant risk of disproportionate punishment "[b]y making

youth (and all that accompanies it) irrelevant to imposition of

that harshest prison sentence." _Id._ In _Montgomery v._

_Louisiana_, 136 S. Ct. 718, 732 (2016), the Supreme Court ruled

that _Miller_ applied retroactively. The _Montgomery_ court further

clarified that "_Miller_ did not foreclose a sentencer's ability

to impose life without parole on a juvenile," but required that

"sentencing courts consider a child's 'diminished culpability

and heightened capacity for change' before condemning him or her to die in prison."  Id. at 726.

The Appellate Division's decision was neither contrary to nor an unreasonable application of Miller.[10]  In contrast to the mandatory life sentences at issue in Miller, Petitioner's sentence of consecutive terms of 40 and 30 years on his two convictions for first-degree murder, with the possibility of parole only after 64 years, while undoubtedly long, was not compelled but a discretionary decision of the sentencing judge.[11] In exercising that discretion the sentencing judge properly considered Petitioner's age, noting that "this was not the conduct of a youthful defendant that was substantially influenced by another person more mature than this defendant. This defendant and his contemporaries in age were the ones who committed this offense."  (ECF No. 26-57, at 32–33.)

---

[10]    Petitioner additionally argues that his sentence violates Miller as it is "the functional equivalent of life without parole."  The Supreme Court, however, has "not yet explicitly held that the Eighth Amendment extends to juvenile sentences that are the functional equivalent of life."  Starks v. Easterling, 659 F. App'x 277, 280 (6th Cir. 2016).

[11]    Petitioner is required to serve 85% of his 40-year term and 30 years of his 30-year term.  (See ECF No. 26-5.)  According to the publicly accessible New Jersey Department of Correction's Offender Search Engine, Petitioner's current parole eligibility date is December 19, 2066.

The Appellate Division properly determined that because Petitioner was not sentenced under a scheme which mandated a life sentence without parole, <u>Miller</u> is not applicable and, therefore, Petitioner is not entitled to resentencing. <u>Accord Bacon-Vaughters v. Johnson</u>, No. 18-9034, 2019 WL 2646579, at *2 (D.N.J. June 27, 2019) ("The holding of <u>Miller</u> applies to mandatory sentences of 'life without possibility of parole for juvenile offenders.'"); <u>Wali v. Att'y Gen. of N.J.</u>, No. 16-9018, 2019 WL 2071191, at *3 (D.N.J. May 3, 2019) (same). Accordingly, relief on this claim is denied.

## IV.   CERTIFICATE OF APPEALABILITY

The AEDPA provides that an appeal may not be taken to the court of appeals from a final order in a § 2254 proceeding unless a judge issues a certificate of appealability on the ground that "the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2). This Court will deny a certificate of appealability because jurists of reason would not debate the Court's ruling.

## V.   CONCLUSION

For the foregoing reasons, the Amended Petition is denied. An appropriate Order will be entered.


Date: _July 30, 2019_                    _s/ Noel L. Hillman_
At Camden, New Jersey                NOEL L. HILLMAN, U.S.D.J.

42